and we will turn to the last case on our calendar, United States v. Little, 21-1078CR. And I understand that Mr. Little is appearing pro se via Zoom today. We can see you on the screen, Mr. Little. Can you maybe say something into the microphone? We don't have your audio yet, so hang on. I'll ask the courtroom deputy, who's our Zoom operator, to get us going. Okay, why don't you try talking now, Mr. Little? I'm sorry, what's that? Yes, we can hear you now. Can you hear us too? Very good. So, Mr. Little, I understand that you would like to reserve two of your 10 minutes for rebuttal. Is that right? That's correct, Your Honor. Very good. You may proceed. Thank you, Your Honor. I'm grateful to the court and the panel, to all of you, Your Honors, for allowing me to appear by Zoom. I'm in England at the moment, where I reside, and it's good morning. No, it's now good afternoon to you too. I can see from the clock here. This case, as you've probably seen from the papers, we've just gone past our 10th anniversary of my arrest at Kennedy Airport on May the 10th, 2012, and my then return to the United Kingdom in 2014 on bail, and my subsequent work as a barrister in the UK until the trial in 2018. The issues of this appeal, as you undoubtedly have seen from the papers, concern this is my second application or motion for a new trial and a request for reconsideration of a restitution order, and both applications are grounded in newly discovered evidence. If I can go through those seriatim for the court, they in respect of charges to counts two through seven, which are failure to file tax counts. These counts came in, in my respectful submission to the court, they militate against the court's Rule 33 motion, denial of the court's Rule 33 motion. They also militate against a pretrial motion based on the misunderstanding, misapplication of the law on the basis that this case, Your Honour, went through iterations of three judges. First of all, the second judge was Judge Castel. The last judge was Judge Castel. Penultimate was Judge Duffy, and the first was Judge Carter. Judge Andrew Carter were the first judges. Under Judge Andrew Carter, the government, through further and better particulars, narrowed these charges to the failure to file Form 1040s. Form 1040s, as the court is undoubtedly aware, I presume the court is aware, are for residents of the United States. They can be green hard holders, they're permanent residents, and under the 1040, you have to file FBARs, and you have to file, you have to file account details, and you also have to file your worldwide income. This was actually stated, that contingent on, in the early pretrial decision against my requirement for my application, that these charges be dismissed, the court stated, in my submission, incorrectly, that failure to file a 1040 automatically, or our failure to notify the Treasury that you were taking a treaty position, automatically catapulted you into having to file a 1040. In other words, it was an either or, it was a binary situation. If you failed to file notification with the Treasury, you had to file a 1040, no matter where you lived. And in this situation, there's no dispute that I moved to the United Kingdom, where I lived since 1983 to 2005, without getting too complicated in this matter, I was involved in very deleterious, to my own financial position, litigation that went on and on between 2005 and 2008 in the United States, and then gave up any residence I had in the United States. I had an SRO on East Willie Knight Street, a single room, that I sort of kept as a legacy. Can I ask a question? I understand your characterization of the government's argument as, if you don't invoke your I understand the case to say that you have to either file a 1040, or a 1040 NR, and to conclude that the failure to file either of those is within the scope of the allegations here, especially in light of the instructions to the jury. Your Honor, because of the narrowing of the indictment in 2013, which was not brought to the jury's attention, that was done by an attorney, the prosecutor at that time who wasn't the trial attorney, through further and better particulars, and by statement to the court, it was stated I was being charged with failure to file 1040s for the years 2005-2010, not 1040 NR. So your position is that 1040 doesn't encompass sort of variants of 1040, that 1040 ABC, I don't know what variants exist, that it only means the square, narrow 1040? That's right, and in the briefing on that, Your Honor, that was specifically, it was somewhat vaguely submitted back in the response to further and better particulars, and then Judge Carter took his view of it, and it was confirmed by the government that it was 1040, specifically 1040. That was confirmed at trial also by the team that were on the prosecution side at the trial. But of course, 1040s and 1040 NRs are very different animals. A 1040 requires an F-file, there's no requirement in my submission that a 1040 NR has that. I mean, if there's a requirement for a 1040 NR, for instance, when I leave the United States, it's the government position, yes, you know, you still hold the green card, legacy or not, no residence in the States, you're required to file a 1040 NR, but there's no requirement to file an F-file. I see no requirement there. And if you don't notify the government, and you notify the government by way of a Form 8833, that in itself, that Form 8833 is not required to be filed if the aggregate income, and I'm making the presumption it's net income, is less than $100,000. This is a very, very complex area of technical violation. But in my submission, the government has amplified to a point where criminal charges have been put in, and to further on to my argument, to buttress a weak conspiracy case, which was the original indictment. I mean, the difficulty is that within 10 minutes, I mean, you're honest, in England, where I practiced briefly as a barrister prior to this situation, I fell on my feet, I think, a couple of months before I was arrested. We do a skeleton argument, and then the panel mercilessly assaults us with questions for a couple of hours on our skeleton. Here, it's very, very difficult for this complexity. Well, Mr. Little, we can assure you that what we do here is rather than grill you for hours, we read your briefs for hours. And yes, you are right. In the American system, we are much more highly dependent on the written advocacy, and the oral argument is meant to be a brief adjunct to that, where we can ask you any last questions to clarify points that may or may not have been clear from the brief. So, you have reserved two minutes for rebuttal. We will hear equally briefly from the government, but we will come back to you, Mr. Little, and if there's anything you feel the need to add, we can do that. Thank you, Your Honor. May it please the Court, Stanley Okula for the United States. Judge Robinson, I'd like to pick up on a point that you made, because I think that you've framed the issue precisely right. There's no dispute here that as a green card holder, Mr. Little had to file a return. And green card holders in that position have a choice. If they wish to claim non-residency status and stake out a treaty position, they may do so by filing a 1040 NR and the accompanying form that specifically sets forth the treaty position. And am I right in understanding that they have three years to, or some period of time to declare their treaty position that's maybe not the same as the timeline here? No, Your Honor, that's not right. They have to do it on the timely file of 1040 NR. But the important point here is, and why we ultimately took the position, as Mr. Little noted, in our bill of particulars, is that if a green card holder chooses not to take a treaty position, which they don't have to, and they might not want to for a number of reasons. For instance, an element of taxation may be treated differently in the foreign jurisdictions, so they might not want to get treated or have their United States income treated as foreign income. Or, more importantly, a revision of the Internal Revenue Code made clear that people who do stake out treaty positions by claiming non-residency status, that that information might get transmitted to the Immigration and Naturalization Service, who monitors whether a continued green card status should continue. So the point here, Judge Robinson, is that you are right, that it's either a 1040, but if no 1040 is filed because of the decision either not to make a treaty claim, or just not to file a claim at all, they're obligated to file a 1040 and report all worldwide income. So what about the argument that, as it turns out, he did take a timely treaty position, and if he was obligated to file anything, it was a 1040 N.R.? Does that take it out of the scope of this indictment and this conviction because this was for failing to file a 1040? No, it doesn't, Your Honor. First of all, we dispute the fact that there was a timely treaty position taken. The treaty position has to be done on a timely filed 1040 N.R. where they inform the Secretary of what the position is. After all, look at what Mr. Little did here. He earned over $670,000 between 2005 and 2010 and reported it to neither the Internal Revenue Service nor HMRC, the U.K. Tax Authority. And it was only after he was indicted in this case for failing to file returns that he rushed in to try to get some relief. But the competent authorities accepted that filing. They didn't say it was too late to invoke a treaty position. No, they didn't. They gave him the mutual assistance procedure, the civil aspect of that, and made a determination that he was or could have certain aspects of his income taxed as if it were U.K. income. But that did nothing to diminish the underlying legal obligation to file a timely return with the IRS, which is what the criminal case was all about. Was it a timely return or a timely 1040? A timely 1040 because he did not stake out, choose to file a 1040 N.R. and therefore was required to report his worldwide income. If you look at the examples set forth in the governing regulation, which I think is 301.7701B-7, which talks about the interaction between the treaty and the statute, it sets forth the example, and it specifically has an example of a green card holder who elects not to claim treaty benefits, even though he or she were entitled to do so. And it spells out what the tax consequences there are. And then in the alternative, it says if that person chooses not to claim the treaty benefits, then they have to report their worldwide income. So that's why our bill of particulars was predicated on a 1040. And simply stated, the proposed resolution by the competent authorities here does nothing to eviscerate or cancel out what the legal framework is. And to buy Mr. Little's argument, you have to essentially say that Judge Castell and this Court got the law wrong when Judge Castell denied the motion to dismiss by ruling that he had to file either a 1040 or a 1040 N.R. And this Court affirmed that, the substance of that. Unless the Court has any other questions for me, we ask the Court to affirm the ruling of Judge Castell below. Thank you very much. Mr. Little, you have two minutes for rebuttal, if there's anything you would like to add. Mr. Little, I think we're not hearing you. Are you unmuted? He has to do it on his end. We still don't hear you. Okay, I'm unmuted. Thank you. Now we hear you. I see that I'm in the wrong square. Most grateful, thank you. With all due respect, my learned friend Mr. Akula is incorrect in terms of the penalties and the fact that you slide into a 1040 in worldwide income if you don't file an 8833. The 2008 legislation is clear. The conjunction that says, and notifying the secretary for failure to file an 8833 has a penalty to it. It's a $1,000 fine. It is not criminal prosecution. This has taken my learned friend, who was in charge of the prosecution right up until trial, has amplified these technical violations into a criminal case, the buttress, in my respectful submission, one is a very weak conspiracy case. Similarly, tagged on to the end were the assistance of file false returns. Judge Castell in the court below said that when listening to the conflicting evidence in there, said we're marching towards a mistrial. My point is that this case, the first panel of the triptych was this is a sophisticated international tax cheat. The second panel of the triptych was this international tax cheat taught the innocent lambs, the segments, how to cheat on their taxes. And the third triptych of the panel, the triptych was, and when he was found out, he started to lie to other people and try and cover his tracks. Well, I'm stating that this is incorrect. And because of the incorrect application of the law, the stitching in the first triptych, I mean, I'm mixing my metaphors, but the stitching starts to unravel. And I'm basically stating this, that they spent 12 witnesses and much testimony and three hour deposition in taken in Guernsey. Mr. Akule himself, my learned friend, traveled to England in 2017 attempting to press the MHMRC to criminally prosecute me. Not that they asked him to leave. I'm completely correct. I'm completely up to date with all my tax filings. There's been no difficulty at all with that. All the income has been paid. It's in fact been taxed. This case, especially this part of the case, the F bars and these aspects that they were to file. And as I said, you know, I mean, mixing metaphors again, a bar stool needs to rest on three legs. If you knock one of them out, it becomes very unstable. And therefore I state the opportunity for a new trial would allow justice to be done in this situation. As Judge Duffy said, justice is founded in truth. And I would like the opportunity to bring the truth to the court and to have that adjudicated. Thank you. Thank you very much, Mr. Little. And thank you to the government. We appreciate your arguments today. As with all of the other cases we have heard today, we reserve decision.